**REPLAS, INCORPORATED, Plaintiff,**

**v.**

**Gene WALL d/b/a Wall & Company, The Illinois Central Gulf Railroad Company, and Ashland Oil, Inc., Defendants.**

**No. EV 79–24–C.**

United States District Court,
S. D. Indiana,
Evansville Division.

April 29, 1980.

Robert O. Williams, Jr., Evansville, Ind., for plaintiff.

Donald R. Wright, Evansville, Ind., for defendant, Ashland.

Robert H. Hahn, Evansville, Ind., for defendant, Illinois Central Gulf R.R.

McRoberts, Sheppard, McRoberts & Wimmer, P.C., East St. Louis, Ill., Thomas J. Kimpel, Evansville, Ind., for defendant, Gene Wall.

## ORDER

BROOKS, District Judge.

This cause comes before this Court on Defendant's, Gene Wall's, Motion to Dismiss alleging that the Court lacks jurisdiction over the person of the Defendant. Plaintiff responded by filing a Motion to

Strike and Compel Compliance with the Rules of the Southern District of Indiana, specifically Rules 1 and 8(a). A hearing was held on the above motions on March 14, 1980, at which time both parties presented their arguments to the Court. At the hearing the Plaintiff asked that the case against Defendant, Gene Wall, be transferred to an appropriate federal court should the Court decide that it lacks personal jurisdiction over Defendant.

The case herein is based on a breach of contract allegation. The facts show that Defendant, Gene Wall, operates a company in National City, Illinois, and Plaintiff is from Evansville, Indiana. The Defendant, Gene Wall, was involved in a contract for the sale of styrene monomer (goods) to the Plaintiff.

The evidence at the hearing showed that the initial negotiations concerning the sale of the goods by Defendant to Plaintiff were conducted through a Mr. John Miller, a manufacturers representative located in St. Louis, Missouri. At approximately the same time that the sale between Plaintiff and Defendants was consumated, Mr. Miller also perfected a sale of the goods from Plaintiff to the Ashland Chemical Corporation (Ashland) located in Valley Park, Missouri. The materials in the case file and the depositions show that the goods were initially located in Illinois and that they were never transported to Indiana but were sent directly to Ashland. Upon receiving the goods, Ashland tested them for compliance with the contract specifications and promptly rejected the goods. Ashland notified Plaintiff of the breach and eventually Plaintiff brought this action against Defendant, Gene Wall, and others alleging a breach of contract.

The Court will first dispose of Plaintiff's Motion to Strike and Compel Compliance with the Rules of the Southern District of Indiana. The oral argument of Defendant's attorney, Mr. Ronald Pallmann, proved that he was in compliance with the Local Rules of this Court. Mr. Pallmann has associated himself with local counsel as required by Rule 1 of the Local Rules, has essentially filed an appearance with this Court on behalf of Defendant, Gene Wall, and has substantially complied with the requirements of Local Rule 8(a) by filing a supporting affidavit with his motion. Consequently, Plaintiff's Motion to Strike is hereby DENIED.

■ Pursuant to Rules 4(c), (e) and (f), Federal Rules of Civil Procedure, in a diversity jurisdiction situation service of process outside the state in which the Court sits may be made pursuant to the state longarm statute provided the requisite due process requirements for asserting jurisdiction are met. The Defendant's, Gene Wall, Motion to Dismiss is based on Rule 12(b)(2), Fed.R. Civ.P. Defendant argues that this Court cannot obtain personal jurisdiction over him using Indiana T.R. 4.4, Indiana's longarm statute, because of a lack of the due process requirement of minimum contacts between the State of Indiana and Defendant.

■ Normally, to prove the validity of service under a state longarm statute, a plaintiff must prove (1) that the conduct complained of is included within the statute and (2) that assertion of jurisdiction would not offend standards of due process, *i. e.* that there are sufficient minimum contacts between the defendant and the state to allow the court to assert jurisdiction without offending traditional notions of fair play and substantial justice. Vol. 2, *Moore's Federal Practice* § 4.41–1[3]; *See, e. g. Fisher v. First National Bank of Omaha*, 338 F.Supp. 525 (S.D.Iowa 1972); *Deering Milliken Research Corp. v. Textured Fibres, Inc.*, 310 F.Supp. 491 (D.S.C.1970); *Green & White Construction Co. v. Columbus Asphalt Corp.*, 293 F.Supp. 279 (S.D.N.Y.1968); Cf. *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Hanson v. Denkla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). However, since the Defendant herein has attacked this Court's jurisdiction only on the basis of the second test given above, Plaintiff need only present proof of minimum contacts between the Defendant and the State of Indiana.

■ Just what constitutes sufficient contact with a state to allow a court to exercise in personam jurisdiction is an issue that must be determined on a case by case basis by considering all the facts and circumstances of the individual case. *Vol. 2, Moore's Federal Practice* § 4.25[5]; *See, Controlled Metals, Inc. v. Non-Ferrous International Corp.*, 410 F.Supp. 339 (E.D.Pa. 1976); *Chemical Bank v. World Hockey Association*, 403 F.Supp. 1374 (S.D.N.Y.1975); *Columbia Metal Culvert Co., Inc. v. Kaiser Industries Corp.*, 526 F.2d 724 (3rd Cir. 1975); *Conwed Corp. v. Nortene S.A.*, 404 F.Supp. 497 (D.C.Minn.1975); *Houghton Mifflin Co. v. National Computer Systems Inc.*, 378 F.Supp. 592 (S.D.N.Y.1974). In examining and weighing all the facts and circumstances of this case the Court notes that when a motion to dismiss is supported by affidavit, the nonmoving party may not rest upon allegations in his pleadings but must set forth specific facts showing that the Court has jurisdiction. *Oddi v. Mariner-Denver, Inc.*, 461 F.Supp. 306 (S.D.Ind. 1978). The nonmoving party's burden is met by a prima facie showing that jurisdiction is conferred by the state longarm statute. *United States v. Montreal Trust Co.*, 358 F.2d 239 (2d Cir. 1966). For the purpose of the Court making a decision on the motion to dismiss and the nonmoving party's prima facie showing of jurisdiction, any affidavits or other specific evidence of the nonmoving party must be assumed to be true. *O'Hare International Bank v. Hampton*, 437 F.2d 1173 (7th Cir. 1971).

■ In the present situation the Defendant has alleged the following by way of affidavit:

1. That at all times mentioned in the complaint filed herein, he was and is a citizen and resident of the State of Illinois.

2. That at all times mentioned in the complaint filed herein, and presently, he operated a business as sole proprietor, said business being known as "Wall & Company", in the City of National City, St. Clair County, Illinois.

3. That he does not now have, nor has he ever had or maintained a place of business in the State of Indiana.

4. That he has never done business within the State of Indiana, either permanently or temporarily.

5. That at none of the times and date stated in the complaint filed herein did he ship or cause to be shipped any goods into the State of Indiana.

6. That in discussing the sale of the contents of a certain railroad car to plaintiff in June, 1978, he dealt with John Miller, an agent of plaintiff.

7. That all meetings between Gene Wall and John Miller concerning this sale took place in the State of Illinois.

8. That Gene Wall engaged in certain telephone conversations with John Miller, concerning the aforesaid sale; that on each occasion, no party to the telephone conversation was in the State of Indiana.

At the hearing Defendant claimed that he never contacted anyone in Indiana and it also became apparent that the contract for the sale of the merchandise in question was signed in Illinois.

The Plaintiff has countered Defendant's affidavit with four things he believes show the requisite minimum contacts necessary for this Court to assert personal jurisdiction over the Defendant, Gene Wall. First, Plaintiff relies on his allegations in paragraph seven of his complaint, specifically that "on or about June 13, 1978, ICG and Wall solicited a sale to Replas of a railcar tanker filled with Styrene Monomer." Second, Plaintiff relies on a letter from Mr. Thomas C. Lee, the President of Replas, Inc., to the Defendant, Mr. Wall, attached to his complaint as Exhibit A; which refers to a phone call between Defendant, Mr. Wall and Mr. Lee. The relevant portion of the letter states:

Confirming our telephone conversation of about a week ago, this is to report that our customer for the styrene monomer which we purchased from you on June 13, 1978, rejected the material . . .

Third, Plaintiff relies on the following portions of the deposition of Mr. Thomas C.

Lee, the President of Replas, Inc., found on page 16 of the deposition:

Q. 49 Do you know or have you been informed by Mr. Miller as to who was the owner of the chemical product at the time of your purchase?

A. It was my understanding that the car was simultaneously or jointly owned by Wall and I.C.G. Railroad.

Q. 50 From whom did you receive that information?

A. From Wall.

Lastly, Plaintiff relies on the following portion of the deposition of Mr. John Miller, a manufacturer's representative that is an agent of Replas, Inc., found on pages 26 and 27 of his deposition:

Q. Did you ask him if he (Gene Wall) was an agent?

A. No.

Q. Did he tell you he was an agent?

A. I'm trying to think how he worded it. When I asked him who owned the car, who owned the material, he said it was the I.C.G., and when we started discussing possible prices, he indicated that he was representing the I.C.G. and he would have to go back and, you know, we could make an offer for the material and then he would have to clear the offer through I.C.G.

Q. You were not aware of the fact that he was purchasing the material from I.C.G.

A. No.

Q. Did it make any difference who owned it as far as you were concerned?

A. No, as far as I was concerned, no. It didn't make any difference whether he owned it or I.C.G. owned it.

Q. From your knowledge of Mr. Wall, was he a responsible businessman as far as reputation was concerned?

A. I would say yes. I cannot criticize him in any way from previous dealings back in time several years earlier with Hammond Plastics and this was the first contact that I had with Mr. Wall since then.

Q. This was to be a cash purchase, was it not, Mr. Miller?

A. On the part of—

Q. Of Replas?

A. I'm not sure what terms Tom Lee arranged with Gene Wall.

Q. Is it your knowledge that Mr. Lee had direct contact with Mr. Wall?

A. Yes.

Q. Do I take it from what you said that you did not participate in any of the negotiations as to how the product was to be paid for?

A. That's correct.

Q. Did you have any negotiations with Mr. Wall as to the price that Replas would pay him for the product?

A. If I recall, I think Tom made an offer at the initial contact when I called Mr. Lee to tell him that his material was available. He said what's the asking price and I believe I quoted some figure that Mr. Wall had asked and Mr. Lee counter-offered. He said, "Do you think he would be interested at this level?" and I said let me call him back and bounce that off of him and get his reaction. That was about the extent of it and after that it was direct between Tom Lee and Gene Wall.

Q. The two of them negotiated and agreed to a price?

A. Yes.

At the hearing Plaintiff stated that the only contact between Mr. Lee and Defendant, Mr. Wall, occurred over the telephone. There was no showing that Defendant, Mr. Wall, ever came to Indiana for any purposes, how many phone calls between the parties were made, or the subject matter of the phone calls, other than price.

Upon a review of the above materials and assuming the Plaintiff's evidence to be true, this Court must hold that the facts and circumstances of this case do not show the minimum contact necessary to allow this Court to assert in personam jurisdiction

over the Defendant. Paragraph seven of Plaintiff's complaint does not say how the sale was solicited and the evidence at the hearing shows that any soliciting was by phone only, with the Defendant being in Illinois; the letter from Mr. Lee and the evidence at the hearing does not state how many telephone conversations occurred between the parties or the subject matter thereof; the fact that Mr. Lee had been informed by Defendant, that he was part owner of the railcar full of the goods does not show that Defendant did any business in Indiana; and the facts show that Mr. Miller's statement that Mr. Lee had direct contact with Defendant meant no more than that the two had discussed the sale over the phone. The Court also notes that when the Defendant confronted Plaintiff at the hearing with the fact that none of the materials he relied on stated that anything happened in Indiana, Plaintiff did not respond. Consequently, the Court must hold that Plaintiff has not made a prima facie showing of this Court's ability to assert personal jurisdiction over Defendant without offending standards of due process.

Furthermore, it appears from the record that the Plaintiff is relying solely upon several telephone conversations between the Defendant and Plaintiff, while the Defendant was in Illinois, as the basis for his contention concerning minimum contacts between the Defendant and the State of Indiana. The Plaintiff has not cited this Court to any authority supporting his position and the Court has also been unable to find any such support. While substantial negotiation in a particular state leading to entering into a contract may be sufficient to allow a court to assert personal jurisdiction over a defendant, *See, Chemical Bank v. World Hockey Association*, 403 F.Supp. 1374 (S.D.N.Y.1973), there has been no showing herein of substantial negotiating activity in Indiana. At most, this Court feels that Plaintiff has shown that the Defendant, Gene Wall, may have solicited business in Indiana through some telephone conversations. As stated in *Houghton Mifflin Co. v. National Computer Systems, Inc., supra*, at 595:

[I]t is our understanding of the law that the solicitation of business in a district—by itself—is not sufficient to confer in personam jurisdiction over a defendant in that district. *Scanapico v. Richmond, Fredricksburg & Patomac R. Co.* (2d Cir. 1970) 439 F.2d 17, in banc, 439 F.2d 25; *Blount v. Peerless Chemicals, Inc., supra*, (2d Cir. 1963) 316 F.2d 695; *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

This Court agrees with the above interpretation of the law as applied to this case. Consequently, the Plaintiff has failed in his burden of making a prima facie showing of this Court's personal jurisdiction over the Defendant, Gene Wall.

■ With respect to Plaintiff's oral motion to transfer this cause should the Court find it lacks personal jurisdiction over Defendant, Gene Wall, the Court hereby GRANTS said motion. Pursuant to Title 28 U.S.C. § 1406, a case may be transferred whether the court in which it was filed had personal jurisdiction over the Defendant or not. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Koehring Co. v. Hyde Construction Co.*, 324 F.2d 295 (5th Cir. 1963). Since it appears from the record of this case that all Defendants are amenable to service of process in Illinois and that this case could have been brought in Illinois, this Court, pursuant to Title 28 U.S.C. § 1404(a), hereby TRANSFERS this case to the Federal District Court for the Southern District of Illinois. The Court finds that in the interest of justice and for the convenience of the parties and witnesses this case should be transferred. Such a transfer will prevent duplication of pleadings and motions, avoid any possible problems with the applicable statute of limitations, and generally provide for a more expeditious resolution of the issues involved in this case.

For the reasons given above, the Plaintiff's motion to transfer this cause is hereby GRANTED. Accordingly, the Defendant's Gene Wall, Motion to Dismiss is rendered MOOT at this time.

IT IS SO ORDERED.