**David L. PAUL, Plaintiff,**

**v.**

**PREMIER ELECTRICAL CONSTRUCTION COMPANY, an Illinois corporation, William Templeman and Michael Hughes, Defendants.**

No. 83 Civ. 4928(MEL).

United States District Court,
S.D. New York.

Dec. 8, 1983.

As Amended Dec. 13, 1983.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Rudnick & Wolfe, Chicago, Ill., for plaintiff; Robert S. Smith, Mary Lu Bilek, New York City and Theodore A. Shapero, Vincent A. Lavieri, Chicago, Ill., of counsel.

Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, for defendants; Patrick Mazza & Associates, Chicago, Ill., of counsel.

LASKER, District Judge.

Defendants move to dismiss this action for lack of personal jurisdiction pursuant to rule 12(b)(2) of the Federal Rules of Civil Procedure. Plaintiff opposes this motion but asks, in the event that it is granted, that the suit be transferred to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). At oral argument heard on November 18, 1983, defendants represented that they did not oppose a transfer of the suit to Illinois. For the reasons set forth below, the motion to dismiss is denied but the case is transferred to the Northern District of Illinois.

### I.

In January, 1981 Premier Electrical Construction Corporation ("Premier"), an electrical construction contractor, entered into a subcontract with Morse/Diesel Inc. ("Morse/Diesel"), the general contractor for the project, to complete certain electrical work. Following completion of Premier's work, a dispute arose between Premier and Morse/Diesel over the payment of $626,280 which led Premier to file a Notice and Claim for Mechanic's Lien ("Notice") on the Chicago property in the Cook County Recorder of Deeds Office on May 13, 1983.

The Notice was filed against the American National Bank of Chicago, the record owner of the property, "and the following parties who may have an ownership interest ... to wit: 666 ASSOCIATES, a limited partnership, 666 SOUTH RESIDENCE CONDOMINIUM ASSOCIATION, [plaintiff] DAVID L. PAUL AND AM MART REALTY CORP." [1] It stated a claim for $626,280 and noted that this sum did not include a separate unlienable claim for $1.2 million which Premier is asserting against Morse/Diesel and/or the owner of the Chicago property. The Notice was mailed to the parties named, including plaintiff Paul, at Chicago addresses. Chemical Bank of New York, who is one of the mortgagees of the property, was the only out of state institution or person to receive a copy of the Notice.

Paul responded to being named in the Notice by filing a four count complaint against Premier, William J. Templeman, its Chairman and Chief Executive Officer, and Michael F. Hughes, Premier's President, in the Southern District of New York on June 29, 1983. The complaint alleges that defendants falsely named Paul in their Notice and that this act constituted libel (counts 1 & 2) and tortious interference with his present and future business relationships (counts 3 & 4). On August 22, 1983, defendants filed this motion to dismiss plaintiff's complaint for lack of personal jurisdiction.

### II.

In support of their motion to dismiss, defendants argue that their conduct and activities do not satisfy the personal jurisdictional requirements of the New York

---

1. Affidavit of David L. Paul, filed Sept. 23, 1983, at Exhibit B.

Civil Practice Law & Rules.[2] Premier is an Illinois corporation with its principal place of business located in that state. Templeman and Hughes are Illinois residents. Negotiation, execution and performance of the subcontract between Premier and Morse/Diesel took place in Illinois. The Notice of lien applies to property located in Illinois. Chemical Bank was the only New York addressee to receive a copy of the Notice. Defendants contend that their mailing of the Notice of lien to the Chemical Bank in New York does not establish a basis for a New York court to exercise personal jurisdiction over them because they were not "doing business" or "transacting business" in New York within the meaning of the relevant New York long-arm statutes.[3]

Defendants further assert that their only contact with New York was their utterance of allegedly libelous material and that all of the plaintiffs' claims arise from the alleged defamation. Defendants note that sections 302(a)(2) and 302(a)(3), the sections under which jurisdiction is asserted, exclude libel as a ground for asserting personal jurisdiction. In addition, they argue that even if the counts of plaintiff's complaint alleging tortious interference with his business allege an independent cause of action, the relevant jurisdictional statute requires the presence of the tortfeasor within New York to support successfully jurisdiction.[4] In this case, defendants claim there is no basis for finding their "presence" in New York because nothing points to New York as the place of their acts or where the critical events in issue took place or the situs of the injury.

Plaintiff answers that counts 3 and 4 of his complaint state a claim for tortious interference with economic advantage which he asserts constitutes an independent cause of action. He argues that his complaint is legally sufficient because it alleges that the defendants knew that Paul did not have a legal or equitable interest in the property that is the subject of the mechanic's lien, that defendants were aware of his current and future business relationships with third parties, that defendants knew that plaintiff would have to disclose the existence of the lien to these parties, and that defendants wrongfully interfered with Paul's business relationships with third parties. In addition, he argues that defendants' inclusion of a nonlienable claim in their Notice was "improper" under Illinois law[5] and therefore wrongfully interfered with economic advantage.

Paul contends that he has alleged facts which disclose a calculated course of conduct designed to impair his relations with various third parties and that while the background facts of this case support a claim for defamation, it does not follow that the alleged tort of tortious interference with economic advantage is merely a defamation count dressed in other garb.

Plaintiff further asserts that the defendants committed a tort within New York State where he has substantial economic ties. While Paul acknowledges that New York law is not settled on whether a mailing of a communication, such as a mechanic's lien, into the state by itself supports personal jurisdiction under section 302(a)(2) of the Civil Practice Law & Rules, he argues that the case *Polish v. Threshold Technology Inc.*,[6] which held that a tort was committed in New York when an out of state defendant mailed a letter to a New York plaintiff, should be relied upon to deny defendants' motion.

Paul also contends that the defendants cannot prevail on their motion under rule 12(b)(2) of the Federal Rules of Civil Procedure merely by rebutting his allegations on paper. In his view, dismissal of these alle-

**2.** *See* N.Y.CIV.PRAC.LAW & RULES §§ 301 & 302(a) (McKinney 1972 & Supp.1982–83).

**3.** *See id.*

**4.** *See* N.Y.CIV.PRAC.LAW & RULES § 302(a)(2) (McKinney 1972).

**5.** *See* ILL.ANN.STAT. ch. 82 § 24 (Smith-Hurd Supp.1983–84).

**6.** 72 Misc.2d 610, 340 N.Y.S.2d 354 (Sup.Ct. 1972).

gations is proper only after the close of trial. Finally, Paul argues that in the event it is found that personal jurisdiction over the defendants does not exist in New York, the action should be transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) because that District can exercise personal jurisdiction over the defendants and a transfer would be in the interest of justice.

### III.

■ Personal jurisdiction over an out of state defendant may not be asserted unless the "minimum contacts" requirement of due process and the relevant state long-arm statute is satisfied. Due process demands that a "defendant's contacts with the forum state be such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.' " [7]

Under state law, which controls in this diversity case,[8] the minimum contacts requirement has been embodied in the long-arm provisions of the Civil Practice Law which describes the nature and quality of contacts that an out of state defendant must have with New York.[9]

■ Where a non-resident defendant commits a tort other than libel out of state which leads to injury within New York State, section 302 of the Civil Practice Law permits courts to exercise jurisdiction where the defendant carries on substantial or systematic activity within the state, derives substantial revenue from interstate or international commerce, or expects consequences in New York from its out of state acts.[10]

### IV.

In deciding a motion to dismiss on the face of the complaint, plaintiff's allegations are entitled to review in the light most favorable to him.[11] Nevertheless, analysis of the complaint shows that plaintiff has not alleged a course of conduct or specific

---

7. *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980), *quoting, Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 5 (1945) and *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940).

8. *See, e.g., Arrowsmith v. United Press Int'l,* 320 F.2d 219, 223 (2d Cir.1963); *Aluminal Indus. Inc. v. Newtown Commercial Assoc.,* 89 F.R.D. 326, 328 (S.D.N.Y.1980).

9. *See, e.g., Laufer v. Ostrow,* 55 N.Y.2d 305, 434 N.E.2d 692, 449 N.Y.S.2d 456 (1982); *Bryant v. Finnish National Airline,* 15 N.Y.2d 426, 208 N.E.2d 439, 260 N.Y.S.2d 625 (1965). *Compare Kramer v. Vogl,* 17 N.Y.2d 27, 215 N.E.2d 159, 267 N.Y.S.2d 900 (1966) (finding no jurisdiction from mere shipment of goods by defendant) *with Buckley v. Redi-Bolt, Inc.,* 49 Misc.2d 864, 268 N.Y.S.2d 653 (Sup.Ct.1966) (finding jurisdiction where there was solicitation of business in New York by defendant).
Provisions of section 302 relevant to this case provide:
"§ 302. Personal jurisdiction by acts of non-domiciliaries
(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
  1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
  2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
  3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
   (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
   (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."
N.Y.CIV.PRAC.LAW & RULES § 302.

10. *See* note 9 *supra; Sterling Television Presentations, Inc. v. Shintron Co.,* 454 F.Supp. 183, 188–89 (S.D.N.Y.1978) (finding an absence of jurisdiction for failure to satisfy these grounds); *Badger v. Lehigh Valley R.R. Co.,* 45 A.D.2d 601, 360 N.Y.S.2d 523 (App.Div.1974).

11. *See Dixon v. Mack,* 507 F.Supp. 345, 348 (S.D.N.Y.1980).

acts by the defendants which establishes personal jurisdiction over them.

■ Taking plaintiff's allegations as true, defendants do not have sufficient contacts with New York State to find that they are "doing business" or "transacting business" here. No allegations have been made that they provide services or solicit business in New York, or that they perform any work in the state. Furthermore, and as discussed above, defendants are an Illinois corporation and residents of Illinois, Premier's principal place of business is in Illinois, the subcontract was negotiated, executed and performed in Illinois, the lien applies to Illinois property, and, with the exception of Chemical Bank, copies of the Notice and Claim for Mechanic's were sent to Illinois parties. Accordingly, defendants' "presence" in New York is insufficient to confer jurisdiction under the New York long-arm statute.

■ Nor can personal jurisdiction be predicated upon the fact that defendants' Notice was mailed to the Chemical Bank of New York. The mailing of the Notice from Illinois to New York does not constitute commission of a tort in New York within the meaning of section 302(a)(2) of the Civil Practice Law & Rules. While plaintiff urges us to rely on *Polish v. Threshold Technology Inc.*[12] in order to reach the opposite conclusion, we agree with the holdings of *Bauer Industries Inc. v. Shannon Luminous Materials Co.*[13] and *Glucoft v. Northside Savings Bank,*[14] cases handed down after *Polish* and cited by defendants. The *Glucoft* court relied upon Judge Duffy's finding that "[t]he New York courts have given a strict interpretation to § 302(a)(2) requiring, in effect, that the defendant be physically present in New York while committing the tort."[15] It noted that the New York Court of Appeals has indicated its support for this interpretation.[16] *Polish*, on the other hand, represents, at best, a minority rule which we decline to follow. Accordingly, we conclude that in order to commit a tortious act "within the state," Section 302(a)(2) requires that the defendant be physically present within the state while committing the tort.

■ Finally, plaintiff's pleadings, even when read in the light most favorable to his position, do not make out the claim of tortious interference with economic advantage. As explained in *Martin Ice Cream Co. v. Chipwich, Inc.,*[17] the elements of tortious interference with economic advantage are: "the defendant's interference with business relations existing between the plaintiff and a third party, *either* with the sole purpose of harming the plaintiff *or* by means that are 'dishonest, unfair or in

---

**12.** 72 Misc.2d 610, 340 N.Y.S.2d 354 (Sup.Ct. 1972).

**13.** 52 A.D.2d 897, 383 N.Y.S.2d 80 (App.Div. 1976).

**14.** 86 Misc.2d 1007, 382 N.Y.S.2d 690 (Civ.Ct. 1976).

**15.** *Lynn v. Cohen*, 359 F.Supp. 565, 568 (S.D.N. Y.1973), *quoted in, Glucoft v. Northside Savings Bank*, 86 Misc.2d at 1008, 382 N.Y.S.2d at 691.

**16.** *See Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1968), *quoted in, Glucoft v. Northside Savings Bank*, 86 Misc.2d at 1009, 382 N.Y.S.2d at 692. As the Court of Appeals has noted:
"The mere occurrence of the injury in this State certainly cannot serve to transmute an out-of-state tortious act into one committed here within the sense of the statutory working [of section 302(a)(2) ]. Any possible doubt on this score is dispelled by the fact that the draftsmen of section 302 pointedly announced that their purpose was to confer on the court 'personal jurisdiction over a non-domiciliary *whose act in the state* gives rise to a cause of action' or, stated somewhat differently, 'to subject non-residents to personal jurisdiction *when they commit acts within the state'*."
*Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d at 460, 209 N.E.2d at 77, 261 N.Y.S.2d at 21 (citations omitted). *See also Kramer v. Vogl*, 17 N.Y.2d 27, 31, 215 N.E.2d 159, 161, 267 N.Y.S.2d 900, 903 (1966); *Bauer Indus. Inc. v. Shannon Luminous Materials Co.*, 52 A.D.2d 897, 383 N.Y.S.2d 80 (App.Div.1976).

**17.** 554 F.Supp. 933 (S.D.N.Y.1983).

any other way improper.' " [18]  While we agree that counts 3 and 4 of plaintiff's complaint constitute an independent claim other than libel, Paul has not alleged that defendants tortiously interfered with his economic advantage. He does not allege that defendants named him in their Notice for the sole purpose of harming him,[19] nor that they employed unfair or dishonest means. In addition, plaintiff's allegation that it was "improper" to mention another claim in defendants' Notice is without merit because this claim was directed against Morse/Diesel and the owner of the Chicago property, not Paul. Accordingly, it cannot be said that defendants committed tortious interference with economic advantage in New York which might provide a basis for asserting personal jurisdiction over them.

### V.

There remains the question of whether, since personal jurisdiction does not exist over the defendants in this district, the case should be transferred, as requested by plaintiff, to the Northern District of Illinois under the provisions of 28 U.S.C. §§ 1404(a) and 1406(c).[20] There is no doubt that, to use the language of both statutes, this is a case which "could have been brought" in the Northern District of Illinois, nor does there seem to be any doubt that it is in the interest of justice to transfer the case rather than dismiss it and it appears likely that such a transfer may well convenience the parties and the witnesses. Moreover, the defendants have already indicated their consent to such a transfer.

For the reasons indicated, the motion to dismiss is denied but the case is transferred to the Northern District of Illinois.

It is so ordered.

**18.** *Id.,* 554 F.Supp. at 945, *quoting, Robbins v. Ogden Corp.,* 490 F.Supp. 801, 810 (S.D.N.Y. 1980).

**19.** Moreover, while the merits of this case are not considered here, we doubt whether plaintiff could in good faith allege that defendants named him in their Notice for the sole purpose of harming him. It appears that defendants are not prohibited under Illinois law from naming plaintiff in their Notice and that defendants were making a legitimate business decision in naming Paul in the Notice inasmuch as he acknowledges that he headed a company which held a related interest in the Chicago property. *See* Affidavit of David L. Paul, filed Sept. 23, 1983, at ¶¶ 2–6. As a result, while plaintiff's allegations do state that defendants' action was intended to harm him, it does not follow that their sole objective was to do so.

**20.** *See Volk Corp. v. Art-Pak Clip Art Service,* 432 F.Supp. 1179, 1181 (S.D.N.Y.1977) and cases cited therein, *quoted in, Corke v. Sameiet M.S. Song of Norway,* 572 F.2d 77, 80 (2d Cir.1978).